**BIG CHIEF DRILLING COMPANY,**
a corporation, Plaintiff,

v.

**ARGONAUT INSURANCE COMPANIES,**
d/b/a Argonaut-Southwest Insurance Company, a corporation, Defendant.

Civ. No. 71-343.

United States District Court,
W. D. Oklahoma,
Civil Division.

Aug. 4, 1972.

George L. Mothershed, Oklahoma City, Okl., for plaintiff.

John T. Edwards, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff, Big Chief Drilling Company (Big Chief) obtained an Oil and Gas Well Drilling Rig Tool Floater Policy from Defendant, Argonaut Insurance Companies d/b/a Argonaut-Southwest Insurance Company (Argonaut), effective from March 23, 1967 to March 23, 1970. During the course of drilling the Sunray DX Oil Company No. 1 Franz Well, twelve 10″ O.D. drill collars were used with Rig No. 37 to drill the well. Six of these drill collars had been purchased during the drilling of the Franz Well and had never been assigned or used on any other drilling rig. The remainder were transferred from another drilling rig of Big Chief and had been used in drilling a portion of a previous well. Upon completion of the Franz Well on December 17, 1968 the rig with these drill collars was stacked on the Franz lease. The rig was later moved on January 25, 1969 to a drilling site in another county but the twelve 10″ drill collars were left behind because they were not needed with the rig in its next operation. The twelve 10″ drill collars were stolen at the Franz Well site some time between June 1, 1969 and June 21, 1969.

The question to be decided is whether the twelve 10″ drill collars were insured under Defendant's policy. The case was submitted to the Court for decision on stipulated facts and briefs. The parties have agreed to separate the issues herein, first determining coverage and then, if appropriate, the amount recoverable.

The insurance contract between the parties provided:

"PROPERTY INSURED Oil well drilling and/or workover equipment as per Schedule, the property of the Assured, or oil well drilling and/or workover equipment for which the Assured may be legally liable."

By an unnumbered Endorsement to the policy it was provided:

"Effective at date set out below, it is understood and agreed that the Schedule of Equipment hereon is as follows: * * *

E. Effective November 1, 1967 * * *

| Item No. | Description of Property | Assured's Rig No. | Amount of Insurance |
|----------|------------------------|-------------------|---------------------|
| 18 | Emsco J1250 Rotary Drilling Rig, complete including all tools and equipment. | 37 | $126,200.00″ |

The policy also provided:

"PROPERTY NOT INSURED This policy does not insure: * * * 10. Property while in permanent storage in any warehouse or storage yard owned, leased or controlled by the Assured."

Endorsement No. 2 to the policy is known as the Component Parts Clause. This clause provides:

"ENDORSEMENT

As respects Items 7 and 18, and in consideration of the rates at which

this Policy is written, it is understood and agreed that Paragraph 9, Valuation,[1] of the General Conditions hereon is amended to read as follows:

### COMPONENT PARTS CLAUSE

In consideration of the Company accepting a statement of values from the Insured and said statement of values being on file in the office of the Insured and the Company and said values forming the basis of loss adjustment, if any, it is understood and agreed that in the event of loss of or damage to any part of a drilling rig insured hereunder, the Company's liability shall not exceed the proporation (sic) of the Insured value relating to that Component Part, as it relates to the Recommended Insurable Value, for such part shall be deemed to include the cost of the labor, material, replacement part.

Transportation and erection charges incurred in reinstating such loss or damage are shown separately.

In the event of loss or damage to the replacement parts or equipment the Assured shall be entitled to recover such proporation (sic) of the said loss as the sum insured for the part replaced bears to the value of such part."

Insurance premiums were based on Plaintiff's own insurable value of all its rigs (component parts being included therein) at rates varying as to territory of use and whether stacked or operating. Monthly reporting was required of Plaintiff as to equipment changes, territory of use and status of rigs.

 The Court will first consider if the twelve 10″ drill collars were not insured because of the permanent storage provision in the policy as the same is above set out. It is undisputed that the twelve 10″ drill collars were not stored in a warehouse of Plaintiff or in a storage yard owned or leased by Plaintiff when they were stolen. It would appear that the twelve 10″ drill collars when left at the Franz Well could be considered to be in a storage yard controlled by Plaintiff and the Court will so find. The problem presented by said policy provision and the circumstances of this case is what the parties meant by using the term, "in permanent storage". Apparently, the term has no common or well accepted meaning in either the oil or insurance industries. It is rather difficult to contemplate something being placed in permanent storage and why anyone would do so if the usual and ordinary meaning is given to the word "permanent". It is believed that the provision is unclear and ambiguous. No authority is required to support the familiar rule that such policy provision should be construed in favor of the insured and coverage and against the insurer and exclusion from coverage. The Court finds that the intent of the parties by said policy provision and the result thereof was to contract and agree that there was no insurance for property of Plaintiff while in a permanent warehouse or storage yard of the Plaintiff. This is to say that the policy provides for insurance when the property is in the field but that there is no insurance when the property is brought from the field and placed in a permanent warehouse or storage yard of the Plaintiff. Applying this construction of said policy provision to the facts of this case results in a finding and conclusion by the Court that said policy provision does not serve to exclude insurance or coverage to the claim herein. The Court concludes that said twelve 10″ drill collars were not "in permanent storage" at the location where they were stolen within the contemplation of said policy provision and coverage thereof was not excluded by said provision.

1. Paragraph 9, Valuation, which was amended by said Component Parts Clause, provides generally that the insurance company shall not be liable beyond the actual cash value of any property at the time any loss occurs, with proper deduction for depreciation.

The Court now turns to the Component Parts Clause of the policy. It appears that a "statement of values" as referred to in the Component Parts Clause was accomplished between the parties as to Rig No. 37 in the form of what was entitled an "Inventory".[2] The Stipulation shows and the parties agree that such Inventory was on file with both Plaintiff and Defendant. In this Inventory as to Rig No. 37 various component parts were listed and described and each was given a Recommended Insurable Value by an independent appraiser. There was also a Recommended Insurable Value given for the whole rig by the independent appraiser. Plaintiff then adjusted these Recommended Insurable Values by making notation changes thereto on the margin of said Inventory form as to insurable values of both certain component parts and the whole rig. The total Recommended Insurable Value by the independent appraiser of Rig No. 37 was in the amount of $243,902.00. However, the Plaintiff adjusted or reduced this figure to the sum of $126,200.00. Plaintiff also eliminated completely certain listed component parts in the Inventory by giving them 0 insurable value and lowered and raised insurable values on other listed component parts. Drill collars were not listed or described as a component part of Rig No. 37 in the Inventory for Rig No. 37. Thus, no Recommended Insurable Value was set out for drill collars in said Inventory nor did Plaintiff add any drill collars of any size to this Inventory or set an insurable value therefor in any amount at any time. This Inventory form provided:

"THIS INVENTORY SHOULD BE REVISED FREQUENTLY BY THE OWNER AS CONDITIONS AND EQUIPMENT CHANGE"

Interpreting the insurance contract the parties entered into it is the finding and conclusion of the Court that by virtue of the Component Parts Clause

and the pertinent Inventory or statement of values of Plaintiff which was accepted by Defendant as to Rig No. 37, the twelve 10″ drill collars in question were not insured or covered when they were stolen as aforesaid. This is because the same were not listed on the Inventory or statement of values for Rig No. 37 with Plaintiff's insurable value placed therein. Nor were they listed or scheduled on an Inventory for any other rig of Plaintiff. It is thus the Court's interpretation of the insurance policy of the parties that if loss is sustained to a component part of a rig as distinguished from an entire rig, such component part must be listed or scheduled in the Inventory or statement of values pertaining to said rig, with an insurable value fixed (to be used to determine the loss) or must be listed or scheduled in the Inventory of some other rig from which it may have been transferred. It appears that as no 10″ drill collars were listed or scheduled in any Inventory on any of Plaintiff's rigs, Plaintiff paid no insurance premium on the insurable value of any 10″ drill collars.

Plaintiff's argument that the twelve 10″ drill collars are covered by reason of Item No. 18 of the Endorsement setting out a Schedule of Equipment in the following language, "18. Emsco J1250 Rotary Drilling Rig, complete including all tools and equipment. (Rig No.) 37 (Amount of Insurance) $126,200.00.", on the basis that said drill collars were equipment included with the rig must fail for the reason that the twelve 10″ drill collars for nearly six months prior to their theft had ceased to be a part of the tools and equipment of Rig No. 37. At time of theft Rig No. 37 was drilling a well in another county using other and different size drill collars.

Plaintiff further argues that as drill collars are frequently transferred between rigs on a routine basis, these twelve 10″ drill collars were covered as they had been used with Rig No. 37 ap-

2. This was also accomplished on all other rigs owned by Plaintiff.

proximately six months before their theft. However, drill collars come in various sizes. Plaintiff did not list, describe, schedule or inventory with insurable values any 10″ O.D. drill collars on any of its rigs and pay premiums thereon. Thus, these drill collars were not insured as a component part of any rig so as to be covered if transferred from one rig to another. Moreover, six of the drill collars had not been transferred to Rig No. 37 but had been bought by Plaintiff and initially placed with said rig. The other six drill collars had been transferred to Rig No. 37 from another rig but for some reason best known to Plaintiff these six drill collars had never been listed or scheduled in the Inventory for any rig nor added to the Inventory for Rig No. 37 when transferred thereto. It is agreed that the policy provided no insurance for any of Plaintiff's property when in permanent storage. It is clear that each Inventory provided that it should be revised frequently as equipment changes occur and it is agreed that the Inventories are the statement of values called for in the Component Parts Clause. And it is also clear that the insurance contract called for monthly reporting by Plaintiff as to equipment changes. Plaintiff thus had the opportunity when the twelve drill collars were placed with Rig No. 37 for drilling the Franz Well to cause them to be scheduled or listed for said rig for insurance coverage at an insurable value given them by Plaintiff and pay the insurance premium attributable thereto. Failing to list or schedule these twelve drill collars at any time on any Inventory for any rig, Plaintiff did not protect them with insurance under Defendant's policy.

Judgment should therefore be entered dismissing Plaintiff's action for the reason that the twelve 10″ drill collars were not insured by Defendant when stolen and the claim of Plaintiff to Defendant for such loss cannot be sustained. Counsel for Defendant will prepare an appropriate judgment dismissing Plaintiff's action and submit the same to the Court for signature and entry herein.